Argued and submitted November 14, 2003, reversed and remanded
September 1, 2004

In the Matter of the Marriage of

Mary E. LUTTERMAN,
nka Mary E. Dietsch,
*Respondent,*

*and*

Allen E. LUTTERMAN,
*Appellant.*

901529; A117724

97 P3d 664

Mark Johnson argued the cause for appellant. With him on the briefs was Bennett, Hartman, Morris & Kaplan, LLP.

Jacqueline L. Koch argued the cause for respondent. With her on the brief was Koch & Deering.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

WOLLHEIM, J.

**WOLLHEIM, J.**

Husband appeals from a judgment for contempt of court, arguing that the court should have granted his motion for summary judgment because wife's contempt action was barred by claim preclusion. We review for errors of law and reverse and remand.

The parties' marriage was dissolved on January 25, 1991. The dissolution judgment incorporated their marital settlement agreement (MSA). The parties' MSA provides, among other things, that, in the event that the family residence is occupied by a person other than husband, whether or not husband continues to occupy the family residence, such occupant must pay rent, with one-half of the rental amount directly payable to wife. It also provides that, if the family residence is not sold within two years from the date of the MSA and if a debt to Craig Wasson has been paid in full by that time, wife is entitled to one-half of all rents payable on the parties' rental properties, less expenses associated with maintenance and upkeep, including taxes and insurance. It further provides that all expenses beyond routine maintenance and upkeep must be incurred only by joint decision of the parties.

On July 12, 1999, wife filed a motion for contempt against husband, arguing that husband should be found in contempt for his failure to abide by the terms of the MSA. Wife asked that husband be found in contempt for failure "to sell certain real property, vehicles and animals/livestock/ 'junk' items in barn" and for failure to divide the proceeds from the sale of those items equally with wife. Wife further argued that husband "failed to pay one-half of the $600 rental value ($300) of the marital residence once it became occupied by someone other than [husband]."

In wife's affidavit in support of her motion for contempt, she stated:

> "6. Further, the [MSA] provides that if the family residence is not sold within two years of the date of the [MSA] and if the underlying obligation on the five-acre lot owed to Craig Wasson has been paid in full by that time, that *I shall*

*be entitled to one-half of all rents payable on the rental prop-erties.* Neither the family residence nor any of the real prop-erties in the [MSA] have been sold and the obligation to Craig Wasson was paid * * * but I have not received any portion of the rents payable on the rental properties."

(Emphasis added.)

The contempt issues were heard in November 1999 and April 2000. The hearing was conducted on April 26, 2000. On September 20, 2000, wife moved for leave to amend her pleadings to add as an issue husband's failure to pay wife 50 percent of the rents payable on the rental properties. In her affidavit in support of that motion, wife explained that, in her motion for contempt, she requested

"that [husband] be held in contempt of court for his willful failure to sell certain real property, vehicles and animals/ livestock/'junk' items * * * and to split the proceeds equally * * * and for his willful failure to pay [wife] one-half of the $600 rental value of the marital residence once it became occupied by someone in addition to [husband], as required by the parties' [MSA]. * * * [Wife] included in her Affidavit * * * the fact that [husband] had failed to give her one-half of income from the parties' rental properties * * *. However, this issue was not specifically raised in [wife's] Motion for Contempt.

"3.   Even though it was not raised by the pleadings, the issue of the income from the parties' rental properties was tried by implied consent of the parties. Throughout the extensive litigation of this case, both [wife] and [husband] exchanged discovery regarding income from the rental properties, addressed many questions in depositions on rental income and expenses, fully briefed the issue in pre-hearing and post-hearing memoranda, and then specifi-cally tried this issue in court. Both parties acted as though the issue had been raised in the pleadings and neither side objected to the presentation of evidence on the issue. * * * [T]his issue * * * should be treated in all respects as if it had been raised by the pleadings * * *."

Husband opposed the motion to amend, and the court denied wife's motion for leave to amend. In January 2001, the court issued an order finding husband in contempt

on other matters but not in contempt regarding rent. Neither party appealed that order.

On June 25, 2001, wife filed a second motion for contempt, arguing that husband failed to pay wife "a portion of the rents payable on the rental properties in this case." In her supporting affidavit, wife explained that "the issue of the rental income on certain properties owned by [husband] and I was not * * * raised in my previous motion for contempt, and the Court did not consider this issue."

Husband moved for summary judgment and argued that wife's second motion for contempt was barred by the doctrine of claim preclusion. The trial court denied husband's motion for summary judgment. In its letter opinion, the court explained:

> "Had [husband] <u>not</u> objected to [wife's] Motion to Amend her Pleading, [the] amendment would have had the effect of allowing the court to consider those issues * * * [and] I would be more disposed to granting the Motion for Summary Judgment on the grounds of claim preclusion.

> "I agree with [wife's] argument that this court, sitting in equity, should not permit [husband] to: (1) Oppose [wife's] motion to amend her pleadings in Case No. 1 to add Claim X; and, (2) Make the argument that [wife's] failure to allege Claim X, which *could* have been included in the first proceeding, should as a result work as a bar via claim preclusion in Case No. 2."

(Emphasis and underscoring in original; internal quotation marks omitted.) The trial court found husband in contempt.

Husband appeals and argues that "[t]he trial court erred as a matter of law in denying husband's motion for summary judgment" because claim preclusion prevented wife from litigating any issue concerning income from the rental properties. Specifically, husband argues that wife's second motion for contempt could have been joined with her first motion because wife's claim in her second motion was based on the same factual transaction that was at issue in the first.

In response, wife makes three arguments. First, wife argues that, in this case, the denial of the motion for summary judgment does not involve a pure question of law and is therefore not reviewable on appeal. Second, she argues that

> "[j]udicial estoppel is a useful analogy in this case. Husband's position in the earlier proceeding is effectively inconsistent with his position on summary judgment. The purpose of judicial estoppel is to protect the judiciary from 'perversion' of judicial machinery and, by denying husband's motion for summary judgment, the trial court avoided just such a perversion."

Third, wife argues that "wife's second motion for contempt is not barred by claim preclusion."

We begin with wife's first argument. Wife contends that

> "a denial of summary judgment is reviewable on appeal only if the motion for summary judgment raised an issue of law and there were no adjudicative facts to be found. Here, the trial court based its ruling, at least in part, on its determination of facts that, the court believed, estopped husband from asserting claim preclusion as a defense to wife's motion. The court's denial, therefore, is not reviewable by this court."

In *Stevens v. Horton*, 161 Or App 454, 461, 948 P2d 868 (1999), *rev den*, 331 Or 692 (2001), we held that a denial of summary judgment was reviewable "[b]ecause that assignment of error turns, ultimately on issues of law, *viz.*, the applicability of issue preclusion * * *." In *Hoy v. Jackson*, 26 Or App 895, 897, 554 P2d 561 (1976), we specifically addressed the doctrine of claim preclusion and explained that "a *res judicata* [(claim preclusion)] or collateral estoppel [(issue preclusion)] issue can properly be determined by way of a motion for summary judgment" because, when faced with a motion for summary judgment, "the court cannot try issues of fact. It can only determine whether there are [legal] issues to be tried[.]" (Internal quotation marks omitted.) In *Hoy*, we cited *Meyers v. Burwell*, 271 Or 84, 89, 530 P2d 833 (1975), as support for the proposition that, "[i]n Oregon, the fact issues germane to a *res judicata*/collateral estoppel issue are determined by the court, not the jury." *Hoy*, 26 Or App at 898 n 4.

Wife argues that this case does not involve a purely legal issue because the court based its denial of summary judgment on facts that estopped husband from arguing that claim preclusion barred wife's second motion for contempt. Wife is correct that the trial court explained that, if husband had not objected to wife's motion to amend her pleading, it would have been "more disposed" to granting husband's motion for summary judgment based on the doctrine of claim preclusion. However, the question under *Stromme v. Nasburg and Co.*, 80 Or App 26, 721 P2d 847, *rev den*, 302 Or 35 (1986), is whether husband's claim preclusion argument requires an evidentiary showing and whether it turns on "*proof* of facts." *Id.* at 29 (emphasis in original). We conclude that it does not. In this case, we can answer the question of whether claim preclusion bars wife's motion for contempt using legal analysis without examining "matters of proof." *Id.* at 30. Therefore, we hold that the denial of husband's motion for summary judgment is reviewable.

■■ Wife's second argument is that the court, in denying husband's summary judgment motion, was acting correctly pursuant to principles of judicial estoppel. Wife cites *Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 892 P2d 683 (1995), as support for her argument. In *Hampton Tree Farms, Inc.*, the Supreme Court explained that the doctrine of judicial estoppel "may be invoked under certain circumstances to preclude a party from assuming a position in a judicial proceeding that is inconsistent with the position that the same party has successfully asserted in a different judicial proceeding." *Id.* at 609. Judicial estoppel "involves three issues: benefit in the earlier proceeding, different judicial proceedings, and inconsistent positions." *Id.* at 611.

■ Wife asserts that husband's argument is that "the court should not **ever** hear wife's claim." (Boldface in original.) We disagree. Rather, husband's position is that the court could have heard wife's claim if wife had properly pleaded the claim initially instead of mentioning the facts surrounding her claim in an affidavit. Furthermore, husband's position would not have precluded wife from amending her pleadings, as long as her amendment had been timely. In *McAmis Industries v. M. Cutter Co.*, 161 Or App

631, 642-43, 984 P2d 909, *rev den*, 329 Or 553 (1999), we explained that

> "[j]udicial estoppel is not applicable unless a party's position in separate proceedings are clearly contradictory. * * * Claim preclusion focuses on what *could have been* litigated in the first action to reach judgment, rather than on the defendant['s] protective response to the dilemma of litigation on two fronts."

(Emphasis in original; internal quotation marks, citation, and footnote omitted.) Therefore, we hold that judicial estoppel does not apply in this case because husband's position that wife's motion for leave to amend was untimely is not inconsistent with his argument that her second motion for contempt is barred by claim preclusion.

We now turn to wife's final argument, that her second motion for contempt is not barred by claim preclusion. ORS 43.130 provides, in part:

> "The effect of a judgment, decree or final order in an action, suit or proceeding before a court or judge of this state, or of the United States, having jurisdiction is as follows:
>
> "* * * * *
>
> "(2)   * * * [T]he judgment, decree or order is, in respect to the matter directly determined, conclusive between the parties * * * litigating for the same thing, under the same title and in the same capacity."

In *Rennie v. Freeway Transport*, 294 Or 319, 323, 656 P2d 919 (1982), the Supreme Court explained:

> "[A] plaintiff who has prosecuted one action against a defendant through to a final judgment * * * is barred * * * from prosecuting another action against the same defendant *where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action.*"

(Emphasis added.)

The Supreme Court explained in *Whitaker v. Bank of Newport*, 313 Or 450, 456, 836 P2d 695 (1992), that

> "enough events to give rise to the second claim must have occurred before the first claim is brought so that the party against whom preclusion is asserted *could* have combined his or her later claims with the earlier ones. The more closely connected or overlapping, the stronger the argument that preclusion should apply."

(Emphasis in original.)

Wife argues that her second motion for contempt is not barred by claim preclusion because her "claim spanned a considerable time period, including a lengthy period after the filing of her first claim. * * * Thus, the principle of claim preclusion did not require wife to bring the claim at the same time as her earlier claim." Wife's argument is not entirely clear, but we assume that her argument is that the rental amounts that she claimed she was owed continued to accrue, thus spanning "a considerable time period."[1]

As stated previously, wife's initial motion for contempt did not state that she was entitled to rent on the rental properties. Rather, wife asked for rents payable on the rental properties in her supporting affidavit. Wife's first motion for contempt was filed in July 1999, and the hearing regarding that motion concluded on April 26, 2000. Therefore, April 26, 2000, was the last possible opportunity to present evidence. Wife subsequently filed a second motion for contempt in June 2000, which specifically stated that she was entitled to her share of rents payable on the rental properties. The record reveals that the parties ceased joint ownership of the rental properties on October 31, 2000. Claim preclusion bars wife from seeking her share of rents payable on or before April 26, 2000. Therefore, the time period in which wife could be entitled to rents owed on the rental properties spans from April 27, 2000 through October 31, 2000. In sum, wife could not have joined her claim for rents owed from the rental properties in her second contempt action with her first contempt acting regarding the rents that had not yet accrued. Therefore, the trial court erred in denying husband's motion for

---

[1] Wife makes other arguments that do not merit discussion.

summary judgment as to the period before April 26, 2000. However, claim preclusion does not bar a motion for contempt regarding husband's failure to pay wife her share of rental proceeds from April 27, 2000 through October 31, 2000.

Reversed and remanded.